IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| In re: SHANNON A. CHASE<br>   Debtor | * | Case No.: 19-10738 |
| SHANNON A. CHASE | * | |
|  *Plaintiff,* | * | |
| v. | * | Adv. Proc.: 20-00100 |
| RESIDENTIAL CREDIT OPPORTUNITIES III MARYLAND, LLC, et al. | *<br><br>* | |
|  *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### AMENDED MEMORANDUM IN REPLY TO OPPOSITION OF MOTION TO DISMISS ADVERSARY COMPLAINT

Defendants, Residential Credit Opportunities III Maryland, LLC and American Mortgage Investment Partner Management, LLC, ("Lender") by and through its attorneys, Michael N. Russo, Jr., Brian T. Gallagher, Brian S. Burkett and Council, Baradel, Kosmerl & Nolan, P.A., offers this Memorandum in Reply to the Plaintiff/Debtor's Opposition to the Motion to Dismiss ("Opposition Memo.")

### Introduction

Lender made a motion to dismiss the Complaint pending in the above captioned action and Plaintiff/Debtor Shannon Chase ("Ms. Chase") opposed the motion. Lender adopts and references their arguments made in support of the motion and will not repeat them here. However, there are some discrete points raised by Ms. Chase's opposition which require a reply. This memorandum is limited to those discrete points.

1

**Argument**

**1. Ms. Chase's claims are barred by the statute of limitations.**

    **a. 11 U.S.C. §108 (a) does not apply to the facts of the instant case.**

Ms. Chase's reliance on §108 (a) fails to take note of the chronological requirements of this section. The section reads, as follows:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, **and such period has not expired before the date of the filing of the petition**, the trustee may commence such action only before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

11 U.S.C.A. § 108 (Bold added.)

Ms. Chase notes the very latest date upon which limitations could expire is January 16, 2019 and that the bankruptcy petition was filed on January 18, 2019: **two days later.** Opposition Memo at para. 10, 39. The "applicable nonbankruptcy law" (Maryland's 3-year statute of limitations, MD Code, Cts. & Jud. Proc. § 5-101) had in fact "expired before the date of the filing of the petition." By its expressed terms, § 108 (a) is inapplicable to the facts of the case. The petition was filed too late.

    **b. The filing of the counterclaim in the state court foreclosure does not toll limitations for this adversary complaint.**

After the failure of 11 U.S.C §108 (a) to permit the adversary proceeding to go forward, and despite the expiration of the statute of limitation, Ms. Chase seeks to posture the adversary proceeding as a continuation of the Circuit Court action. Ms. Chase incorrectly seeks to have the tolling of the statute of limitations in the Circuit Court extend to this adversary proceeding. However, the adversary proceeding is actually an impermissible collateral attack of the Circuit

Court's ruling rather than an extension of that case. This collateral attack would cause this Court to impermissibly intrude on the role of the Maryland Court of Special Appeals.

"The *Rooker-Feldman* doctrine, established by two Supreme Court decisions handed down sixty years apart, provides that a federal district court lacks the jurisdiction to hear a collateral attack on a state court judgment or to review final determinations of state court decisions. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). § 8:1.Overview, Bankr. Evid. Manual § 8:1 (2019 ed.). The intention of the *Rooker-Feldman* doctrine is to prevent federal courts of original jurisdiction from becoming an forum in which to appeal state court rulings.

The test for determining whether the *Rooker-Feldman* doctrine should be applied requires an examination of the content and status of claims in each action. This test is described, as follows:

> In determining whether the *Rooker-Feldman* doctrine applied, the Supreme Court held that the test was whether the asserted issues in the federal court proceeding are "inextricably intertwined" with an issue resolved by the state court. Lower courts noted that there was no bright line that could be discerned from this standard. The Court provided further clarification to the test in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* and the following four-part test is applied:
>
> 1. the federal plaintiff lost in state court;
> 2. the plaintiff complains of injuries caused by the state court judgment;
> 3. the judgment was rendered before the federal suit was filed; and
> 4. the plaintiff is inviting the court to review and reject the state court judgment.
>
> The first and third prongs are procedural issues. The first prong requires the plaintiff to have lost in state court. The doctrine applies even if the state court judgment was entered by default. The test has not been satisfied where the state court ruling was an order, not a judgment. It has also not applied where the plaintiff in the bankruptcy proceeding was the prevailing plaintiff in the state court action. The judgment entered in state court need not be final for the doctrine to apply. It is applicable if the judgment has been appealed.

§ 1:99.Overview of the Rooker-Feldman doctrine, 1 Bankruptcy Litigation § 1:99

This doctrine is likewise applied to an adversary proceeding in a bankruptcy action. In *Keeler* the U.S. District Court for the District of Maryland affirmed a ruling of the Maryland Bankruptcy Court that the Rooker-Feldman doctrine barred the bankruptcy court from reviewing state court actions, even those in which an appeal was pending. The U.S. District Court concluded, as follows:

> The bankruptcy court lacks jurisdiction under the *Rooker–Feldman* doctrine to review state court judgments, even for alleged jurisdictional deficiencies, and so did not abuse its discretion in declining to review the validity of a Maryland state court charging order. The operation of *Rooker–Feldman* renders the resolution of a state court appeal irrelevant to the question raised on appeal before this court.

*In re Keeler*, 273 B.R. 416, 422, 2002 WL 230700 (D. Md. 2002), see *Charchenko v. City of Stillwater*, 47 F.3d 981, 984 (8th Cir. 1995) ("Charchenko's state law claims are barred by Rooker–Feldman. The state court determined that Charchenko must pursue a writ of certiorari before he could obtain relief under state law for wrongful termination. Because Charchenko has never pursued a writ of certiorari, allowing the district court to apply state law to the merits of Charchenko's wrongful termination claim would effectively void this determination."); see also *In re Johnson,* 210 B.R. 1004, 1006–07 (Bankr. W.D. Tenn. 1997) ("to the extent necessary, this court will sua sponte lift the automatic stay to allow litigation in the Tennessee courts, both trial and appellate, to continue.").

The instant action began in the Circuit Court as a foreclosure action filed by the Lender in this action, against Ms. Chase. On November 14, 2018, Ms. Chase filed a counterclaim alleging forgery and moved *ex parte* for a temporary restraining order preventing the foreclosure sale. The Lender moved to strike the counterclaim and opposed the injunction. On December 7, 2018 the Circuit Court for Anne Arundel County granted the injunction conditioned on Ms. Chase making

escrow payments of $1,891.68 per month retroactive to the date of the motion. On December 27, 2018, the Circuit Court denied Lender's motion to strike the counterclaim. On January 4, 2019, Ms. Chase noted an appeal of the Circuit Court action to the Maryland Court of Special Appeals. On January 14, 2019 the Circuit Court lifted its injunction on the foreclosure sale. On January 23, 2019 the Lender filed a Suggestion of Bankruptcy in both the Circuit Court and appellate cases. The appeal has not been briefed or argued and the case is stayed due to the bankruptcy.

The wrongful event alleged in both actions is an act of forgery. Likewise, the relief is the same: to relieve the Ms. Chase of the obligation under a note due to the alleged forgery of her signature on various documents. Ms. Chase chose to advance that argument in the state courts and still has an appeal pending in that matter. If the trustee chooses to take up the state Circuit Court action, it can. Likewise, if Ms. Chase wishes to, she can ask that this Court abstain to continue the state court action. What cannot be done is attack that action collaterally in this adversary proceeding.

      c. **There is not "continuing harm."**

The doctrine of continuing harm "tolls the statute of limitations in cases where there are continuing violations. Maryland's theory of continuing breach of contract is a limited one, however. To apply the continuing harm doctrine, the breach itself -- rather than the damages -- must be continuing in nature. If the allegation is more properly understood as the continuing effects of a single earlier act then the limitations period is not tolled." *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 681, 198 A.3d 879, 889 (2018), *reconsideration denied* (Jan. 29, 2019), *cert. granted sub nom. Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 463 Md. 523, 206 A.3d 314 (2019), and *aff'd sub nom. Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 467 Md. 126, 223 A.3d 947 (2020). Further, "while there may have been *continuing ill effects* from the

original alleged violation, there was not a series of acts or course of conduct by appellee that would delay the accrual of a cause of action to a later date." *Duke St. Ltd. P'ship v. Bd. of Cty. Comm'rs of Calvert Cty.*, 112 Md. App. 37, 52, 684 A.2d 40, 48 (1996). For example, the statute of limitations can be tolled for a continual tort such as a nuisance, or the monthly over-charging of rent. *See id.* ("claims that are in the nature of a 'continuous tort,' such as nuisance, can extend the period of limitations due to their new occurrences over time"); *see also*, *MacBride v. Pishvaian*, 402 Md. 572, 584, 937 A.2d 233, 240 (2007), abrogated on other grounds by *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 76 A.3d 1076 (2013) ("continuing violations that qualify under this theory are continuing unlawful acts [like] monthly over-charge of rent, not merely the continuing effects of a single earlier act"). However, the statute of limitations is not tolled in cases stemming from a singular event like continuing to receive emails after failing to remove an email address form a distribution list, or the breach of a contract. *See Walton v. Network Sols.*, 221 Md. App. 656, 677, 110 A.3d 756, 769 (2015) (explaining that the failure to remove an email address from a distribution list is a single event and not an ongoing trespass or nuisance claim such that the continuing harm doctrine is applicable); *see also Mills*, 239 Md. App. At 682 (explaining that the statute of limitations is not tolled under the continuing harm doctrine when the alleged harm stems from a single breach of contract).

Ms. Chase's "continuing harm" theory fails on its own definition. Opposition at para. 47. One singular act of forgery cannot be said to be a harm repeated over time such as monthly failure to make rent payments or continued nuisances coming from one neighbor to another's property like smoke or odor. While there may be "continuing ill effects," the doctrine of continuing harm cannot be used to delay the accrual of the statute of limitations based on the singular act.

    d. **Stating fraud with particularity.**

Ms. Chase begins her argument with misstatements of the elements of a civil fraud. Ms. Chase cites the court to a 1978 appeal of a criminal conviction of forgery in *State v. Reese,* 283 Md. 86, 87, 388 A.2d 122, 123 (1978). The Court of Appeals described the issue in that matter, as follows: "In the present appeal we are called upon to determine whether the making of a false or fictitious entry in the tax rolls of a county government constitutes the crime of forgery either at common law or under Maryland Code (1957, 1976 Repl.Vol.) Art. 27, s 44." *State v. Reese*, 283 Md. at 87, 388 A.2d at 123 (1978). Starting from this unsteady foundation, Ms. Chase glosses over the 5 elements required to assert a prima facia case of civil fraud.

> To prevail on a claim of fraud, a plaintiff must show, by clear and convincing evidence:
>
> (1) that the defendant made a representation;
> (2) that at the time he knew the representations were false;
> (3) that he made them with the intention and purpose of deceiving the plaintiff;
> (4) that the plaintiff relied on such representations; and
> (5) that the plaintiff sustained the alleged loss and damage as the proximate result of the representations.

*In re Valdes*, 188 B.R. 533, 535 (Bankr. D. Md. 1995). See Memorandum in Support of Motion to Dismiss at p. 8. Ms. Chase's adversary complaint must state the facts specific to each element – this is not done. Instead Ms. Chase makes only general statements about an alleged scheme which is alleged to have occurred in 2007 between her deceased father and the originating lender of the loan in question. Ms. Chase ignores the fact, well known from the foreclosure action, that the Lenders are assignees of the loan and not the parties to the transaction in 2007. If Ms. Chase is to raise a 13-year-old alleged act of forgery committed not by Lender but by Lender's predecessor in title, they are required to allege much more by way of specific facts to give the Lender an inkling of the basis for these allegations. With this in mind, it is readily apparent that

7

the alleged fraudulent allegations are inadequate. To illustrate, the facts which must be stated with particularity, include the following:

1. When and how did Ms. Chase become aware of the alleged forgery?
2. How is the alleged employee/forger Lashean Taylor related to the Lender? Opposition at para. 61.
3. Who were the other "employees" who perpetrated the scheme?
4. What specific representations were made?
5. What role did Ms. Chase's father have in the alleged scheme? Did he perpetrate or facilitate the fraud? Was he an accomplice?
6. Did the Ms. Chase ratify the transactions which provided significant amount of money to her father?
7. Why was Ms. Chase included on the loan documents?
8. What were proceeds of the loan used for?
9. Where did the alleged forgeries take place?
10. Was Ms. Chase aware of any or all of the multiple applications for loans?
11. Did Ms. Chase have access to or control over her father's financial affairs?

It is well established that, "in the Fourth Circuit, a complaint must identify with particularity the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Mere allegations of 'fraud by hindsight' will not satisfy the requirements of Rule 9(b)." *In re Madeoy*, 576 B.R. 484, 495 (Bankr. D. Md. 2017) (internal citations omitted). Additionally, "Rule 9(b) requires that all claims must be pled with particularity to each defendant." *Id*.

Ms. Chase's Adversary Complaint is deficient in that it fails to allege *any* facts which show that Lenders involvement or liability of any fraudulently obtained signature. Moreover, the elements of fraud have not been met. To prevail on a claim of fraud, a plaintiff must show, by clear and convincing evidence:

> (1) that the defendant made a representation;
> (2) that at the time he knew the representations were false;
> (3) that he made them with the intention and purpose of deceiving the plaintiff;
> (4) that the plaintiff relied on such representations; and
> (5) that the plaintiff sustained the alleged loss and damage as the proximate result of the representations.

*In re Valdes*, 188 B.R. 533, 535 (Bankr. D. Md. 1995). The Adversary Complaint is completely devoid of any such facts. Presumably because no such facts exist. Ms. Chase merely, and without support, states that Lenders engaged in a "scheme to defraud plaintiff/Ms. Chase" and the Defendants "wrongfully entered mortgage notes and filed Deeds of Trust." *See* Adversary Complaint, paras. 69-70. These are conclusory allegations stated without any particularity.

Ms. Chase did not meet her burden of pleading fraud with particularity. Ms. Chase fails to provide any material facts to show that Lenders committed any intentional act that would amount to fraud and further survive against a motion to dismiss. Without facts to support the allegations, Ms. Chase's claim for fraud against Lenders must be dismissed.

2. **Ms. Chase is equitably estopped.**

Ms. Chase is equitably estopped from, and/or has waived any right to, advancing the arguments in the Adversary Complaint. Ms. Chase seeks to avoid this inevitable conclusion by advancing another theory of fraud that is both without any factual support and unmerited. Ms. Chase's new theory fails for two reasons: (1) the loan modification documents are admissible, and (2) Ms. Chase failed to offer any evidence regarding her prior representations.

The loan modification documents are admissible. The Federal Rules of Evidence provide, as follows:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed *claim* or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise *the claim*; and
> (2) conduct or a statement made during compromise negotiations about *the claim*--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408 (italics added). This Rule provides for the exclusion of documents related to the claim at issue. In this case, the claim advanced by Ms. Chase is the alleged fraud. Here, Ms. Chase seeks to exclude the 2016 Letter, Assistance Form, Hardship Affidavit and Authorization Letter as documents related to settlement discussions. However, the documents are not inadmissible on that basis. Lenders have offered 2016 Letter, Assistance Form, Hardship Affidavit and Authorization Letter to show prior representations made by Ms. Chase related to the modification of Ms. Chase's loan and not negotiations of Ms. Chase's claim of forgery. Thus, the 2016 Letter, Assistance Form, Hardship Affidavit and Authorization Letter are not inadmissible as settlement documents.

Further, without any factual support, Ms. Chase's statements in her Opposition are now advancing an alternative theory that her mother, Catherine Chase, was also involved in submitting forged/false documents to Lender. Ms. Chase merely states that the documents bearing her name and/or signature, as well as extensive personal financial information that would tend to only be known by Ms. Chase, was not of her own doing. In essence, Ms. Chase is attempting relieve herself of her debt obligations by stating that her father forged her signature on loan documents prior to his death, and that her mother submitted false loan documents after his death, all at time when Ms. Chase was making payments on the loan and actively participating in mediation during the foreclosure process. That argument is nonsensical and is completely devoid of any facts stated with particularity. Ms. Chase is estopped from making allegations that are contrary to her prior representations of which Lenders relied on.

## Conclusion

For these reasons, Lender requests that the Adversary Complaint be dismissed in its entirety, with prejudice, and that this Court provide any further relief as it may deem appropriate.

                                      COUNCIL, BADEL,
                                      KOSMERL & NOLAN, P.A.

By:   */s/ Michael N. Russo, Jr.*
       Michael N. Russo, Jr.
       Brian T. Gallagher
       Brian S. Burkett
       125 West Street, 4th Floor
       Annapolis, MD  21401
       410-268-6600
       Russo@CouncilBaradel.com
       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this <u>8th day of May 2020</u> a copy of the foregoing was delivered <u>via U.S. mail, first class, postage prepaid</u>, to the following:

William C. Johnson, Jr.
The Johnson Group, LLC
6305 Ivy Lane, Suite 630
Greenbelt, Maryland 20770
*Attorney for Ms. Chase*

                                                */s/Michael N. Russo, Jr.*
                                                Michael N. Russo, Jr.